UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GWENDOLYN A. ATKINS                                                    CIVIL ACTION

VERSUS

SOUTHEAST COMMUNITY
HEALTH SYSTEMS                                                NO.: 11-00047-BAJ-RLB

RULING AND ORDER

Before the Court is the **Motion for Summary Judgment (Doc. 82)** filed by

Southeast Community Health Systems ("Southeast") seeking dismissal of Gwendolyn

A. Atkin's ("Plaintiff") claims against it pursuant to Federal Rule of Civil Procedure

("Rule") 56. Plaintiff filed a memorandum in opposition to Southeast's motion. (Doc.

91-2). The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(4), and 42

U.S.C. § 2000-e(5). For reasons stated below, Southeast's motion is **GRANTED**.

## I.    BACKGROUND

On January 26, 2011, Plaintiff filed a Complaint against Southeast. (Doc. 1).

Plaintiff asserted that she began working as an administrative assistant for

Southeast[1] beginning on or about July 22, 1996, and was initially fired on March 14,

2008. Specifically, Plaintiff was dismissed from her job by Linda Beauvais,

Southeast's Executive Director at the time, for using the company's 340B Drug

---

[1] There appears to be some slight inconsistency over the position that Plaintiff was originally hired to fill. Plaintiff's Original Complaint and First Amended Complaint state that she was hired as an administrative assistant. (Docs. 1 at ¶ 6; 38 at ¶ 7). However, Plaintiff submitted for the Court's review a document indicating that she was hired as a Receptionist/Appointment Clerk, and that she assisted with data entry and other administrative duties, including transporting Southeast's patients. (*See* Doc. 86-1).

1

JURY

Program—an assistance program through which Southeast paid for medications at a discounted rate for patients who go to a particular pharmacy—for her personal prescriptions although she had insurance coverage. (Doc. 82-3 at p. 119). At the time of Plaintiff's termination, Ms. Beauvais was under the mistaken impression that Southeast employees were precluded from receiving prescriptions under the 340B Drug Program. (*See id.*). Following her discharge in March of 2008, Plaintiff filed an EEOC Charge of Discrimination, after which senior officials at Southeast became aware of Plaintiff's wrongful discharge and reinstated her.  (*See* Doc. 38 at ¶ 11). Plaintiff further alleges that upon her reinstatement, she withdrew the pending EEOC Complaint.  (*Id.* at ¶ 12).

Plaintiff further alleges that she filed a second charge of discrimination sometime in early-to-mid 2009.[2]  (*See* Doc. 38 at ¶ 15).  Plaintiff was fired again on May 20, 2010, for "providing medication to patients without sound documentation for issuance and clearance by a medical provider," and for "[w]orking outside the scope of assigned duties and responsibilities." (*Id.* at ¶ 19; Doc. 82-3 at p. 123). Plaintiff's termination followed an internal investigation in which Southeast alleges it discovered that Plaintiff abused her access to and knowledge of the clinic's Prescription Assistance Program ("PAP"), a program through which drug companies supply medication free of charge to qualifying patients who meet income criteria.

---

[2] Plaintiff's second EEOC Complaint alleges that upon her reinstatement to her position at Southeast, she was "subjected to different terms and conditions of employment" and "was not given a performance evaluation and...was paid less than [her] White counterparts." (Doc. 82-3 at p. 89). On this basis, Plaintiff believed she was discriminated against because of her race and because of having filed a previous EEOC Complaint. (*Id.*).

(Doc. 82-1 at pp. 1 – 2).  Based on these assertions, Plaintiff claims that Southeast violated Title VII of the Civil Rights Act of 1964, by retaliating against her for having filed a charge of discrimination with the EEOC.

On December 14, 2011, Plaintiff filed a motion to stay and administratively close this matter pending the resolution of a state criminal proceeding that was initiated against her on April 11, 2011, in the 21st Judicial District Court, Parish of St. Helena Parish, State of Louisiana, Docket Number 18950. (Doc. 16).  In support of the motion, Plaintiff indicated that "in response to a motion for discovery" in the criminal proceeding, she learned that "on or about May 21, 2010, Dr. Joseph Freeman, who was at the time the Medical Director of [Southeast] . . . in an undated written statement under oath declared that plaintiff . . . was prescribing medications particularly for erectile dysfunction to many patients including family members." (Doc. 16-1 at p. 3) (emphasis removed).  Plaintiff attached a copy of the affidavit to her motion to stay. (Doc. 16-4).

On February 3, 2012, the United States Magistrate Judge granted the motion, and stayed the proceeding until the pending criminal charges against Plaintiff had been resolved. (Doc. 23).  On October 8, 2014, Plaintiff filed a motion to reopen the case on the basis that the criminal proceedings against her had terminated in her favor, (Doc. 26), which the Magistrate Judge granted on November 17, 2014, (Doc. 27). Plaintiff filed a motion for leave to file her First Amended Complaint on March 19, 2015. (Doc. 34).  On April 15, 2015, the Magistrate Judge granted Plaintiff's

unopposed motion for leave to amend, (Doc. 37), and Plaintiff's First Amended Complaint was entered into the record that same day. (Doc. 38).

In the First Amended Complaint, Plaintiff included new allegations related to her arrest and the criminal charges and proceedings brought against her. (Doc. 38 at ¶¶ 22—32). Plaintiff asserts that Dr. Freeman and Ms. Senegal signed affidavits accusing her of improperly prescribing erectile dysfunction medication to patients, including family members, (*Id.* at ¶ 33), and this led to the criminal charges instituted against her, (*Id.* at ¶ 32). Specifically, Plaintiff asserts that the affidavit signed by Dr. Freeman states, in pertinent part, the following:

> [Plaintiff] was prescribing medications particularly for erectile dysfunction to many patients including family members. Some people were prescribed as many as three prescriptions for erectile dysfunction at the same time. This appears to have been going on for some time.

(*Id.* at ¶ 33). Plaintiff further asserts that this allegation was made solely for the purpose of discrediting her and defeating her EEOC charge of discrimination, which allegedly cost Plaintiff her job, caused her to be charged with a crime, and caused her to be discredited in the community. (*Id.* at ¶ 36).[3]

---

[3] Because they are remotely relevant to the analysis set forth *infra*, the Court briefly summarizes the criminal proceedings brought against Plaintiff. On February 8, 2011 (approximately two weeks after Plaintiff initiated this lawsuit), Plaintiff was arrested by an employee of the Louisiana State Police for possession of controlled dangerous substances. (Doc. 38 at ¶ 22). On April 11, 2011, the State of Louisiana instituted a criminal prosecution in the 21st Judicial District Court, Parish of St. Helena, Docket Number 18950. (*Id.* at ¶ 23). In the bill of information, the State accused Plaintiff of eight counts of possession of controlled dangerous substances (either Cialis or Viagra) in violation of La. R.S. § 40:971.B. (*Id.* at ¶ 23). Plaintiff filed a motion to quash the information on the grounds that Cialis and Viagra are not controlled dangerous substances as defined by La. R.S. § 40:961 et seq. (*Id.* at ¶ 24). On May 8, 2012, the State filed a motion to dismiss in docket number 18950. (*Id.* at ¶ 24). On May 7, 2012, the State instituted a second criminal prosecution in the 21st Judicial District Court, Saint Helena Parish, Docket Number 19735. (*Id.* at ¶ 25). In the bill of information, the State accused Plaintiff of eight counts of obtaining legend drugs by misrepresentation or fraud in violation of La. R.S. § 40:1238.3. (*Id.* at ¶ 25). On March 4, 2013, the date the trial by jury was scheduled to commence, the State *nolle prossed* the charges. (*Id.* at ¶ 26). Plaintiff then submitted a public records request to

On August 21, 2015, Dr. Joseph Freeman filed a Motion to Dismiss (Doc. 56), arguing, *inter alia*, that Plaintiff's malicious prosecution and defamation claims brought against him should be dismissed on the grounds that they were subject to the one-year prescriptive period provided by Louisiana Civil Code article 2492. (Doc. 56-1 at pp. 3—4). The Court granted Dr. Freeman's motion, dismissing Plaintiff's malicious prosecution and defamation claims against him as having prescribed before Plaintiff included them in her First Amended Complaint. (*See* Doc. 68).

On October 31, 2016, Southeast filed the instant Motion for Summary Judgment. (Doc. 82). In its motion, Southeast argues that Plaintiff is unable to establish a *prima facie* case for unlawful retaliation under Title VII. Specifically, Southeast asserts that Plaintiff offers no evidence of a causal connection between her filing an EEOC Charge and termination of her employment. (Doc. 82-1 at p. 11). Southeast suggests that the extended period of time between Plaintiff filing her second EEOC Charge and her termination—around 10 months—indicates that "the two events are entirely unrelated." (*Id.*). Southeast also avers that its response to prior complaints filed by Plaintiff demonstrates that there was no animosity or retaliatory intent on its part; "in fact," Southeast argues, "they demonstrate the

---

the District Attorney for a complete copy of the District Attorney's file. (*Id.* at ¶ 27). On April 10, 2013, the District Attorney denied the request and stated "the matter remains active, and due to information received since March 4, 2013, it is likely that the same, similar or additional charges . . . will be forthcoming." (*Id.* at ¶ 27). On October 18, 2013, the state court held a hearing in which the State stipulated on the record that the matter was dismissed and that there are no charges pending against Plaintiff. (*Id.* at ¶ 28). Plaintiff made a second public records request to the District Attorney. (*Id.* at ¶ 29). In a letter dated December 2, 2013, the District Attorney again denied the public records request and stated: "We are currently considering whether to file additional criminal charges against [Plaintiff]...." (*Id.* at ¶ 29). On June 20, 2014, at another state court hearing, the State stipulated on the record that prescription had run on the charges, and they cannot be rebilled. (*Id.* at ¶ 31); (Doc. 26-1 at p. 4).

opposite – that SCHS listened and responded to Ms. Atkins' complaints of discrimination."[4] (Doc. 82-1 at pp. 11 – 12). Southeast further argues that there is no evidence that there was any discussion of Ms. Atkins' pending EEOC Charge by Southeast employees then conducting the investigation." (Doc. 82-1 at p. 12).

Additionally, Southeast argues that it asserted a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, namely, the "overwhelming indications that she submitted prescriptions to the PAP without appropriately documented prescriptions and provider approvals, almost always for Viagra, a high value drug, and almost always on behalf of friends and family members." (Doc. 82-1 at p. 12). Southeast suggests that Plaintiff cannot prove that Southeast's stated reason is actually a pretext for unlawful discrimination. That is, Southeast asserts that "[a]side from [Plaintiff's] claims of verbal authorization, Ms. Atkins offers no justification whatsoever for her actions, and no evidence at all in rebuttal of SCHS's legitimate discriminatory reason for her termination." (Doc. 82-1 at pp. 11 – 12).

Finally, Southeast argues that the Court should dismiss Plaintiff's malicious prosecution and defamation claims against it for the same reasons the Court dismissed identical claims against Dr. Freeman, namely, because the claims had prescribed by the time Plaintiff filed her First Amended Complaint to include those claims. (Doc. 82-1 at pp. 13 – 17).

---

[4] As briefly mentioned earlier, Southeast's response to Plaintiff's initial EEOC Complaint and wrongful termination included reinstatement to her previous position and back pay to compensate for lost wages between the time of Plaintiff's termination and her reinstatement.

In response, Plaintiff asserts that Southeast has been "desperately trying for more than six years to convince the world that that (sic) Gwen Atkins is a criminal to conceal the reason for her termination-retaliation for having filed an EEOC charge." (Doc. 91-2 at p. 1). The bulk of Plaintiff's motion emphasizes the alleged lack of evidence that Plaintiff committed the crime of which she was accused, this presumably done either to signify a causal link between Southeast's termination decision and Plaintiff filing an EEOC charge of discrimination, or to demonstrate that Southeast's reason in support of its termination decision was pretextual.[5]

## II.   DISCUSSION

### A. LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations omitted). At this stage, the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve

---

[5] Plaintiff's opposition does not respond to Southeast's assertions regarding the timeliness of Plaintiff's malicious prosecution and defamation claims.

factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if "the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor," the motion for summary judgment must be denied. *Id.* at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotations omitted). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

### B. ANALYSIS

#### 1.  Title VII Retaliation Claim

Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of its employees . . . because [the employee] has opposed any practice made an unlawful employment practice" by the statute or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation, a plaintiff must first demonstrate that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 376 (5th Cir. 2007) (citing *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003)). "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision." *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (internal quotation marks and citations omitted). "After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Id.* (internal quotation marks and citations omitted).

Filing an EEOC charge is clearly a protected activity. *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000), abrogated on other grounds, *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (citing *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995)). Likewise, termination is clearly an adverse employment action. *Id.* The question, then, is whether Plaintiff can fully establish her *prima facie* case of retaliation by demonstrating that a causal link exists between the two. To satisfy the "causal link" requirement of a Title VII retaliation claim, the employee must provide "substantial evidence that 'but for' exercising protected rights, she would not have

been discharged." *Wheat v. Florida Parish Juvenile Justice Com'n*, 811 F.3d 702, 705 (5th Cir. 2016) (citing *Univ. of Texas Sw. Med. Ctr. V. Nassar*, 133 S.Ct. 2517, 2533 (2013)).  In determining whether Plaintiff can prove a causal connection, the Court considers "(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *Valderaz v. Lubbock Cty. Hosp. Dist.*, 611 F. App'x 816, 823 (5th Cir. 2015) (quoting *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x. 437, 442–43 (5th Cir. 2007)). Regarding temporal proximity, the U.S. Court of Appeals for the Fifth Circuit has held that "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not always be enough for a prima facie case." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004) (emphasis added).

The only relevant factor bearing on the existence of a causal link is the temporal proximity between Plaintiff's protected activity and her termination. Relevant to this motion, Plaintiff filed her second EEOC Complaint in July of 2009, and Southeast concedes that it was aware of the EEOC Complaint at least as of that time.[6] (Doc. 82-1at pp. 2 – 3). Plaintiff was ultimately terminated in May of 2010. (*Id.*). Although the exact amount of time between the two events is unclear from the record, the pleadings and evidence before the Court demonstrates that about ten months had passed between Plaintiff's protected conduct and termination. Thus, to the extent Plaintiff relies on temporal proximity to establish a causal link, such

---

[6] The record is not clear as to the exact date.

reliance is unavailing, as smaller lapses of time, by themselves, have been insufficient to show a causal link in satisfaction of a retaliation claim. *See Bell v. Bank of America*, 171 Fed.App'x. 442, 444 (5th Cir. 2006) (unpublished) (seven-month lapse, by itself, did not demonstrate a causal link); *Myers v. Crestone Intern., LLC*, 121 Fed.App'x. 25, 28 (5th Cir. 2005) (unpublished) (three-month lapse, by itself, did not create a causal link); *Harvey v. Stringer*, 113 Fed.App'x. 629, 631 (5th Cir. 2004) (unpublished) (ten-month lapse, by itself, did not create a causal link); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (five-month lapse, by itself, did not create a causal link).

However, a review of the record demonstrates that there is little-to-no evidence from which the Court can infer a relationship between Plaintiffs second EEOC Complaint and her ultimate termination. That is, in her memorandum in opposition, Plaintiff attempts to offer evidence that raises an inference opposite of that which the law requires, namely, to argue that because the investigation preceding Plaintiffs termination resulted in a criminal investigation, and because the ultimate criminal investigation did not result in a finding of guilt for the crimes charged, Plaintiff's termination was necessarily based on the fact that she filed an EEOC Complaint. Consistent with this, Plaintiff offers evidence in an attempt to establish that it is impossible to conclude that Plaintiff was guilty of the activities for which she was terminated, and that therefore her termination had to result from the pending EEOC Complaint. (Doc. 91-2).

11

The Court finds that Plaintiff's narrative, although interesting, is not sufficient as a matter of law to satisfy the requisite "but-for" causation standard needed to maintain a Title VII retaliation claim. *See Wheat*, 811 F.3d at 705 (requiring that the employee provide "substantial evidence that 'but for' exercising protected rights, she would not have been discharged). Outside of random, unsubstantiated assertions that Plaintiff filing an EEOC Complaint resulted in her termination, Plaintiff spends little time discussing the alleged retaliatory termination, and instead spends more time discussing the timeline of the criminal investigation against Plaintiff. Because Plaintiff has failed to carry her burden of demonstrating the existence of a genuine issue of material fact, summary judgment is warranted.

### 2.   Malicious Prosecution and Defamation Claims

Southeast also seeks the dismissal of Plaintiff's malicious prosecution and defamation claims, which were asserted by Plaintiff for the first time in her First Amended Complaint. Southeast avers that at the time Plaintiff filed her amended complaint, the newly added claims had prescribed. (Doc. 82-1 at pp. 13 – 15).

The Court has already addressed identical claims, and has dismissed Plaintiff's malicious prosecution and defamation claims against Dr. Freeman as prescribed. (*See* Doc. 68). For the reasons stated in the Court's previous Ruling and Order, the Court finds that Counts 2 and 3 of Plaintiff's First Amended Complaint should be dismissed, as Plaintiff's malicious prosecution and defamation claims have prescribed.

### 3. Remaining State Law Claims

Having disposed of Plaintiff's Title VII claim against Southeast, the Court declines to exercise supplemental jurisdiction over any of the remaining state-law claims Plaintiff may pursue against any remaining defendants. *See* 28 U.S.C. § 1367(c)(3) (stating that district courts "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . .").

## III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgment (Doc. 82)** filed by Southeast Community Health Systems is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims of Plaintiff Gwendolyn Atkins against Defendant Southeast Community Health Systems are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's state-law claims against all remaining defendants, including Selena Senegal, are **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, this 7th day of March, 2017.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

13